# COMMERCIAL CONSTRUCTION CONTRACT

This agreement ("Agreement") is made and entered into as of April 26th, 2019 between **Elder KY, Inc dba Elder Construction** (a Kentucky General Contractor) with its principal place of business located at 10197 Bunsen Way, Louisville, KY 40299 ("Contractor") and **SIB Salons, LLC d/b/a My Salon Suite**, with its principal place of business located at 10200 W 44th Ave, Suite 220, Wheat Ridge, CO 80033 ("Owner"). Owner and Contractor may be referred to collectively herein as the "parties" or individually as a "party."

The Construction Site Address:   *1075 E South Boulder Road, Louisville, CO 80027*

1. **The Project.**

    A.   Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed.

    **Tenant Space Renovation**

    B.   For the Contract Price identified below, Contractor agrees to complete the Scope of Work as provided in the attached Exhibit "B," incorporated as if fully set forth herein (identified as the "Project" in this Agreement).

2. **Contract Price**

    A.   Owner agrees to pay Contractor the amount of $ 486,110 (the "Contract Price") for completing all of the work described in the Scope of Work and any and all other tasks as required to complete the Scope of Work based on the plans outlined by owner, in conjunction with an agreed upon scope of work. This Contract Price includes labor and materials necessary to complete the entire Scope of Work as agreed upon in the proposal attached as Exhibit B., including, without limitation, lumber, hardware, cement, and steel re-bars.

    B.   The Contract Price also includes demolition of the existing structure at the Site (consistent with whatever portions of the existing structure must remain in place pursuant to the Plans) including haul away of all debris.

3. **Contingencies to Commencement.**

    A.   A pre-bid meeting and agreed upon proposal serve as compliment to the Complete set of Plans and Specifications. The bid proposal has been approved by both Owner and Contractor.

    B.   The Project will be considered substantially commenced when all related building permits, loans, down payments, and other approvals have been secured.

    C.   Contractor and Owner mutually agree that the above conditions have been met to both parties' satisfaction.

4. **Start and Completion Dates.**

    A.   Work under this Agreement will commence May 15th, or, at an agreed date following any pending revised architectural drawings, and upon receipt of the standard 20% (aprox.) down payment of ($70,110).

PLAINTIFF_155

B. Work under this agreement will be Substantially Completed on or before August 12th ("Substantial Completion Date"). Contractor will notify Owner upon Substantial Completion of the Scope of Work. Owner and Contractor shall review all items of the Scope of Work and notate any items to be repaired or completed (the "Punch List Items"). Contractor shall complete all Punch List Items and the Scope of Work will be Finally Completed within *10 Work Days* after Contractor and Owner's review of the Scope of Work. (the "Final Completion Date").

C. The Finish Date shall be August 12th. Definition of Finish Date is when the Certificate of Occupancy is issued. A $200 per work day credit to franchisee to be issued if Finish Date is missed.

D. Contractor will not be responsible for any work delays caused by Acts of God, such as severe storms, tornadoes, lightning, ice, fire, and floods.

E. The Contractor shall make no claim for any damage against the Owner arising out of any suspension or delay in performing the Scope of Work. The Contractor's primary remedy for any delay or suspension not caused by the Contractor shall be an extension of the Contract time referenced hereinabove, which shall be processed as a Change Order and approved by the Owner.

5. **Incorporated Documents**. This Agreement incorporates by reference certain documents which define and describe the work to be done. The following documents are incorporated as though included in full as part of this agreement:

A. Contractor must have an executed Non-Disclosure Document and a Master Service Agreement in place with Suite Managing Franchise (SMF)

B. A Scope of Work (Bid Proposal), attached hereto as Exhibit "B", and related correspondences.

C. The Certified Architectural Plan from: One Architecture, Inc., dated March, 13, 2019, with revisions for City Comments dated April 19th, 2019.

6. **Scope of Work.**

A. The Contractor shall provide the services and tasks set forth in this Agreement and any attachments thereto. The Contractor shall perform and furnish or cause to be performed and furnished all work, labor and materials, and shall provide all services and supervision, necessary for or incidental to the successful completion of the Scope of Work in the most expeditious and economical manner consistent with industry accepted standards for the construction of a retail establishment in the local region where the Project is located, lawful construction practices, and the interests of the Owner, to ensure the compliance with the Substantial Completion Date and the Final Completion Date. The Contractor shall be responsible for all construction means, methods, techniques, sequences and procedures within the scope of the Work, except to the extent such are expressly compelled or limited by the Construction Documents. The Contractor acknowledges that it has visited the Site, examined the surveys and reports concerning the Site which have been completed to the date of this Agreement, examined all conditions affecting the Work, and is fully familiar with all of the conditions thereon and affecting the Work

B. The Owner reserves the right to engage third parties, including architects and engineers, to assist Owner in various capacities related to the Work and Contract Documents, including the administration of the Contract Documents. The Contractor shall fully cooperate with all such third parties, including architects and engineers, in all aspects of the Work and Contract Documents,

PLAINTIFF_156

including the administration thereof, provided such are identified to the Contractor together with respective roles and authority.

C.   Notwithstanding anything in this Agreement to the contrary, under no circumstances will the Owner be bound by any decision and/or interpretation of the Contract Documents, or all addenda thereto, whether by the Architect, the Engineer, or any of Owner's other consultants, the Contractor or otherwise, unless approved by the Owner by issuance of a valid Change Order as provided herein, and the Contractor shall not be obligated to act thereupon until a valid Change Order is issued. The Owner reserves all rights to make the final decision regarding any aspect of the Project and the Contract Documents, subject only to the dispute resolution procedures of this Agreement.

D.   The Contractor agrees that it is a fiduciary of the Owner with respect to all funds received by the Contractor on account of the Project, and that it will treat all monies received on account of the Project as trust funds for the benefit of the Owner, the Contractor, Subcontractors, suppliers and others providing work, labor, services and materials to the Project.

E.   The Contractor shall arrange for the delivery, storage, insurance, protection and security of all materials, systems, and equipment provided in connection with the performance of the Scope of Work until the same are incorporated into the Project. The Contractor acknowledges that the Owner may supply materials, equipment, systems, or other items (the "Owner-Purchased Items") for incorporation into the Work. The Owner will coordinate the delivery of Owner-Purchased Items with the Contractor, provided that the Contractor gives reasonable notice to the Owner concerning its ability to receive such items. The Contractor acknowledges and agrees:

i.   That it will arrange and be responsible for the storage, protection, security, installation and incorporation into the Work of all Owner-Purchased Items as if they were purchased by the Contractor;

ii.   That it will be fully responsible for the proper installation and operation of all Owner-Purchased Items as delineated in the Construction Documents. The Owner may assign its warranty rights for any Owner-Purchased Items to the Contractor for enforcement by the Contractor; and

iii.   The Owner may elect to purchase other items not currently noted in the Construction Documents. If the Owner so elects, the cost of such items may be subtracted from the Contract Price at the Contractor's discretion.

*For this project, the HVAC / RTU warranty will be provided by the HVAC installing company.

F.   The Contractor shall maintain an accurate record of all deviations from the plans and specifications which occur in the Work as actually constructed, and shall submit to the Owner two (2) sets (one to be reproducible) of complete information including descriptions, drawings, sketches, marked prints and similar data, indicating the "as-built" conditions. At the Owner's option, such information shall be submitted in electronic format, or in such format as is acceptable to the Owner. The Contractor shall keep "as-built" record drawings up to date concurrently as the Work progresses.

G.   Upon request, the contractor shall obtain from the Subcontractors- brochures, guarantees, certificates of compliance and agreements as required pursuant to this Agreement and the Contract.

PLAINTIFF_157

Contractor shall also obtain all owner's manuals and maintenance instructions for all equipment installed for the project, and provide these to Owner upon completion of the project.

H.    Contractor shall consult with the Architect and the Owner's other consultants with respect to the Architect's or the Owner's other consultants' interpretation of the Drawings and Specifications and advise the Owner of all pertinent communications and recommendations made in connection therewith, it being understood and agreed that should any dispute arise between the Contractor and the Architect or the Owner's other consultants in connection with the Drawings and Specifications, the interpretation of the Architect or the Owner's other consultants shall be binding on the Contractor, subject to the dispute resolution procedures of this Agreement.

I.    Contractor shall provide a weekly report to the owner that contains pictures of the site and a narrative for the work performed and completed within the past week, and what work will be taking place in the coming week. Contractor will attend a weekly conference call with SMF and franchise partners.

J.    Upon commencement of the Project, Contractor shall provide a detailed construction schedule to Owner, showing the expected progress during each week of the project. Contractor shall update the schedule prior to the weekly meetings mentioned above, and shall communicate a plan for catching up if the schedule falls behind.

K.    Contractor shall inspect and coordinate the work of all of its Subcontractors and use its best efforts to ensure that the same is being performed in accordance with the requirements of its respective Subcontracts and/or the Contract Documents so as to guard the Owner against any defects and deficiencies in the Work.

L.    Unless otherwise specifically provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work up to Final Completion.

M.    The Contractor shall take all reasonable precautions for the safety of and provide all reasonable protection to prevent damage, injury or loss to all of its employees at the Site and all other persons who may be affected thereby, and all property at the Site or otherwise used in connection with the Work.

N.    Coordination of the Work shall be carried out by Contractor so as not to affect the architectural, mechanical, electrical or structural integrity, and limitations of the Work to the extent consistent with the Contract Documents, and shall be performed in such sequence and manner as to avoid conflicts. The Contractor shall produce all necessary construction coordination drawings to ensure the proper coordination of the Work.

O.    The Site Supervisor, an employee of the General Contractor must be on site every day and will be fully dedicated to this project.

P.    Purchase Orders must be issued for all items listed in Bid Invitation Letter within one week of contract being executed.

PLAINTIFF_158

Q. An affidavit from General Contractor, listing all subcontractors and suppliers whom the general contractor has contracted with in connection with the work must be given to the owner within one week of commencement of the work. Within 14 days of the Finish Date, Contractor must give to owner a written representation that all bills for labor and materials for work done or authorized by owner or performed to owners account in connection with the Premises have been paid (with invoices or other back-up confirming all costs incurred by owner), as well as original, valid, unconditional mechanic's lien releases from the general contractor and all other contractors, and suppliers who performed work or furnished supplies for or in connection with work at the Premises (including all parties listed in the affidavits referenced) covering all of the work and such other evidence as owner's landlord may reasonably request to evidence that no liens can arise from the work.

R. The Contractor will provide a moisture test and deliver the results to the owner in advance of installing the floors. The owner will evaluate the report and confirm with the contractor, in writing, via email, or otherwise, on how to proceed. The cost of generating the report, as well as any additional costs to mitigate moisture will be the responsibility of the Owner. The contractor is not responsible for any installation delays caused by the moisture test or potential mitigation of moisture from the space.

7. **Compliance with Law**

A. Contractor commits to use reasonable care to meet the requirements of state, federal and local Law when discharging its responsibilities under this agreement.

B. If any Law enacted after the Contract Date changes the Scope of Work under this Agreement, the parties will execute a Change Order adjusting the Contract Price and Contract Time to accommodate the change in the Scope of Work.

8. **Permits and Fees**

A. Owner (franchisee) shall secure all necessary permits, licenses and renewals at Owner's expense required by government authority to complete construction of the project.

B. Owner will pay the building permit fee, plan check fee, and charges levied by government for testing, inspection and re-inspection of the Project.

C. Any structural observation by Engineers, Architect's fee, Deputy Inspectors fee or any City Fee will be paid by Owner.

9. **Owner's Responsibilities**

A. Owner affirms that Owner has the right to enter into this Agreement and has the right to contract for construction of the Project on the Job Site. Owner shall pay all taxes and assessments due on the job site during the period of construction and shall take all reasonable actions required to protect marketable title to the job site.

B. Owner will not unreasonably interfere with or permit others to interfere with, stop, hinder, or delay completion of the Work by Contractor or Subcontractors except as provided under this agreement.

PLAINTIFF_159

C. On written request from Contractor, Owner shall identify: (1) The legal description of the property being improved, (2) Whether there is a Surety Bond in effect on the improvement Project and if so, the name and last known address of the Surety and a copy of the Bond, and (3) Whether there are any prior recorded liens or security interests on the real property being improved and, if so, the name and address of the person having the lien or security interest.

10. **Representations by Contractor.** The Contractor acknowledges that it has received and has had a reasonable opportunity to fully review all of the Construction Documents, Plans and Specifications, including, without limitation, sketches, bulletins, or responses to Requests for Information ("RFIs"), which are either (i) necessary for the proper execution and completion of the Work or for the proper operation of the completed improvements or (ii) consistent with and reasonably inferable from the Construction Documents as being part of the scope of the Work, may hereafter be furnished and will be incorporated in Exhibit B and into the Work at no additional cost to Owner. The Contractor acknowledges that it has participated, and will participate, in meetings with Owner and its consultants, and that the Contractor has been given ample opportunity to obtain a thorough understanding of the intended final product. The Contractor hereby agrees that the Contract Price established herein will include all work, labor, materials and supplies, insurance, tools, equipment, licenses, taxes on materials, approvals, transportation, testing of systems and equipment, and such services and items required to complete the scope of work in accordance with the intent of the Contract Documents, and as necessary to provide the Owner with a fully functioning facility, unless otherwise provided in this Agreement. The Contractor warrants and represents that there shall be no increase in the Contract Price unless an approved Change Order is issued pursuant to the terms of this Agreement.

11. **Representations by Owner**

A. Owner has reported to Contractor all conditions known to Owner which may not be apparent to Contractor and which might significantly increase cost of the Work or delay completion. These concealed conditions include, but are not limited to, hazards on the job site, unsuitable soil conditions, prior defective work of others, and latent defects in the Plans or Specifications. Also inclusive of similar or related Work, and obligations imposed by government.

B. Owner has provided Contractor with information on subsurface or concealed conditions at the job site. Except to the extent that Contractor knows this information to be false, Contractor is entitled to rely on the accuracy of this information. Contradictions to this information are subject to additional charges.

12. **Discrepancy Between Plans and Field Conditions.** If any concealed structure, water, power, waste, drain or gas line is uncovered or revealed during construction which is not as indicated in the Contract Documents or is inconsistent with information provided by Owner, Contractor shall promptly, and before any such structure or line is disturbed or damaged (except in an Emergency), notify Owner. Contractor shall submit a Claim for a Change Order which covers the additional cost incurred as a result of such structure, water, power, waste, drain, or gas line uncovered or revealed during construction.

13. **Differing Site Conditions**

A. Contractor shall promptly, and before the conditions are disturbed, give a written notice to Owner on encountering unforeseeable conditions adversely affecting the Work. Owner shall investigate the site conditions promptly after receiving notice. If the conditions cause an increase in cost to Contractor or the time required for performing any part of the work and were not reasonably

PLAINTIFF_160

foreseeable by an experienced Contractor, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

B. If concealed or unanticipated conditions require a change in the Plans or Specifications, Contractor will issue a Change Order modifying the Contract Documents, Contract Price and Contract Completion Date, if any.

C. Anything in this contract notwithstanding, Contractor is entitled to rely on express or implied representations concerning site conditions made by Owner and those employed by Owner regardless of whether those representations are made in Contract Documents or otherwise.

14. **Payments**

A. Owner will pay to Contractor the Contract Price ($486,110) in installments consisting of an initial payment, progress payments, and a final payment on completion of the Work.

B. The down payment is **$70,110.**

C. **Progress Payments as follows:**

| | | |
|---|---|---|
| 1. | After 17 Days- Demo work, floor trench & fill | $88,000.00 |
| 2. | After 34 Days- Rough Plumb & Electrical | $95,000.00 |
| 3. | After 51 Days- RTU install | $95,000.00 |
| 4. | After 68 Days- Drywall & Ceiling Grid | $88,000.00 |
| 5. | Upon Final Completion: | $50,000.00 |

D. **Processing of Progress Payments.**

i. Contractor shall provide Owner with an application for payment (invoice) ("Pay App") in a form which complies with generally accepted trade practice, but which shall include, at a minimum:

(a) A certification from Contractor that the item of Work or delivery of Material described above which triggers a partial payment being due has been fully completed, or, as the case may be, that the Material has been delivered;

(b) Executed conditional waivers of lien, in a form as approved by the Owner and agreed to by the Contractor, from itself and from all of its Subcontractors and Materialmen for the Work done and materials furnished through the date covered by the Application for Payment;

(c) Executed un-conditional waivers of lien, in a form as approved by the Owner and agreed to by the Contractor, from itself and from all Subcontractors and Materialmen for the Work done and materials furnished through the date covered by the last preceding Application for Payment;

(d) An affidavit of payment from the Contractor certifying that all laborers, Subcontractors (if applicable) and Materialmen engaged by it directly have been paid for the Work performed and materials furnished through the date of the last preceding Application for Payment;

PLAINTIFF_161

(e)    In the case of Invoices for or which include request for payment for stored materials and equipment, such Invoices shall include a bill of sale or other confirmation that stored materials and equipment are the property of Owner.

ii.    All Pay Apps shall, as a condition precedent to payment, materially conform with the requirements of this Article, and include all of the documentation specified above and required herein.

iii.    Any application for payment that does not include the required documentation (unless failure to provide such documentation is excused in advance by the owner in writing), and any payment on account thereof, may be withheld by the owner for processing or payment, in whole or in part, at the owner's discretion.

iv.    Within 7 Business Days after receipt of a Pay App, subject to confirmation of the certifications and representations made by Contractor in such Pay App, Owner shall pay Contractor the amount requested in the Pay App.

v.    Payment of a Pay App or for any Work shall not constitute acceptance of such Work or relieve the Contractor of its responsibility to complete and provide all warranties and guarantees related to the Work in accordance with the terms and conditions of this Agreement

vi.    Each Application for Payment shall constitute a warranty and representation by the Contractor that:

(a)    the partial payment then requested has been incurred on account of the Work or is justly due to the Subcontractors on account thereof, in the amounts indicated in the Application for Payment, subject to retention and/or offsets allowed under this Agreement or the applicable Subcontract, whichever is more stringent as against the Subcontractor;

(b)    the materials, supplies and equipment for which such Application for Payment is being submitted have been incorporated in the Project or have been stored at the Project or at insured or bonded off-Site storage locations which shall have been approved in writing by the Owner;

(c)    all the materials and equipment which have not been incorporated into the Project for which payment is being requested have been insured in accordance with the provisions of this Agreement;

(d)    to the best knowledge and belief of the Contractor, the materials and equipment either incorporated into the Project or delivered but not yet made a part thereof, are not subject to liens or encumbrances of any third parties, except as allowed by applicable law;

(e)    to the best knowledge and belief of the Contractor, no mechanic's, laborer's, vendor's, materialman's or other liens have been filed in connection with the Project on account of the Work or any of the materials, supplies or equipment incorporated therein or purchased in connection therewith (excluding liens relating

PLAINTIFF_162

to the Owner's failure to make payment when and in the amount due under this Agreement); and

    (f)    the Work which is the subject of such Application for Payment has been performed in strict accordance with the Contract Documents, except to the extent allowed by the Owner or its representatives.

    vii.    Final Payment shall not become due until the Contractor submits to the Owner final lien waivers from itself and each Subcontractor, in a form approved by the Owner, stating that all indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered has been paid or otherwise satisfied or will be paid from proceeds of the Final Payment.

E.    **Withholding and Recovery of Payments.** The Owner may withhold a reasonable portion of the payment or, because of subsequently discovered information, may nullify a portion of any previously approved payment, including the final Pay App, to such extent as may, in the reasonable judgment of the Owner, be necessary:

    i.    to assure payment of claims or liens of any persons supplying labor or materials for the Work, unless such claims or liens have been bonded or unless the lien arises from the Owner's failure to make payment in the amount and when due under this Agreement;

    ii.    to protect the Owner from loss then known due to defective Work or to reimburse the Owner or the Architect, the Engineer and the Owner's other consultants for fines on account of noncompliance with applicable laws, rules, regulations and requirements;

    iii.    to protect the Owner from loss due to death or injury to persons, or damage to the Work, or damage to the property or other work of the Owner, other Subcontractors or others to the extent of the Contractor's fault to the extent not covered by insurance;

    iv.    in the event that there is reasonable evidence that the Work will not be completed within the time set forth in the Project Schedule and such delay is not excused or compensable under this Agreement, and the withholding is consistent with the attendant delay damages allowed to the Owner under this Agreement;

    v.    in the event that the Contractor fails to furnish any of the information required by this Agreement or by law; or,

    vi.    in the event that the Contractor fails to perform the Work in accordance with the Contract Documents.

F.    The Contractor agrees that upon receipt of each payment from the Owner, the Contractor shall promptly make payments to each Subcontractor due monies from said payment (if any).

G.    The acceptance by the Contractor of the Final Payment due under this Agreement, or of any Final Payment due upon any earlier termination of this Agreement, shall constitute a full and complete release of the Owner from any and all claims, demands and causes of action of any nature whatsoever that the Contractor may have against the Owner. The making of partial payments or of any such Final Payment by the Owner to the Contractor shall not constitute an acceptance of

PLAINTIFF_163

the services and/or Work product of the Contractor or be deemed a release of the Contractor from any claims, demands or causes of action that the Owner may now, or at any time hereafter, have against the Contractor.

H.    The Owner, in its judgment reasonably exercised and in good faith, may withhold from any payment due or to become due to the Contractor a reasonable amount sufficient to reimburse the Owner for the following:

i.    on account of the correction or re-execution of those portions of the Work which are designated as Defective Work or have not been performed in accordance with the Contract Documents;

ii.    claims of the Owner then pending against the Contractor; or

iii.    claims against the Owner attributable to the Contractor's negligence, misconduct, breach of contract or other default under this Agreement, in excess of insurance proceeds related thereto.

I.    The Owner shall have the right to apply any amounts so withheld in such manner as the Owner may deem proper to satisfy such claims, to secure such protection and to correct all defective or non-conforming Work. Such application of amounts withheld shall be deemed payment for the account of the Contractor, provided the initial withholding is found to be justified and proper in amount and the application is consistent with the obligation to mitigate.

## 15.    Liquidated Damages.

A.    The Contractor acknowledges that time is of the essence in the performance of its obligations pursuant to this Agreement, and that if the actual date on which the Contractor achieves Substantial Completion and/or Final Completion is later than the agreed-upon Substantial Completion Date or Final Completion Date (as appropriate) as stated in this Agreement, the Owner will suffer damages that, while actual, may be difficult, if not impossible, to determine. Accordingly, as compensation to the Owner for damages arising from or associated with "unexcused" or "unsubstantiated" delay by the Contractor in achieving Substantial Completion and/or Final Completion, the Contractor agrees that in the event it does not achieve Substantial Completion and/or Final Completion by the Substantial Completion Date and/or Final Completion Date (as may be adjusted pursuant only to the terms of this Agreement), the Owner shall be entitled to withhold, assess or charge against the Contractor the amount of Two Hundred Dollars ($200) per day for each day after the Substantial Completion Date and/or Final Completion Date until the Contractor achieves Final Completion.

B.    Any calculation of time for purposes of this Agreement shall be calculated as follows:

i.    All references to "days" shall mean calendar days. If the Final Completion Date falls on a weekend or federal holiday, it shall be deemed to be the first preceding business day.

ii.    The day of the Final Completion Date shall not be included in any applicable time period, but the day of actual Substantial Completion shall be included in any applicable time period.

iii.    "Workday" is defined by any day Monday thru Saturday, not to include Sunday.

PLAINTIFF_164

16. **Changes in the Work**

A. All changes to the Scope of Work should be approved by Owner in writing.

B. Other clauses in this agreement notwithstanding, there will be no change to the value of the Work or the Contract Price without a written Change Order.

17. **Note About Extra Work and Change Orders**. Extra Work and Change Orders become part of the contract once the order is prepared in writing and signed by the Parties prior to commencement of any Work covered by the new Change Order. The order must describe the scope of the Extra Work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule.

18. **Defective Work**

A. On written notice from Owner, Contractor shall promptly remove from the Job site all Work or Materials not in compliance with the Contract Documents, whether or not such rejected Work or Materials are incorporated in the Project. Contractor shall promptly repair or replace such rejected Work or Materials at no cost to Owner.

B. If Contractor has a reasonable, bona fide disagreement with an Owner decision regarding rejection of Work or Materials, Contractor is entitled to an expedited resolution of the issue under the provisions of this Agreement which cover dispute resolution. Pending resolution of this dispute, the obligation of contractor to make correction of the rejected Work or Materials is suspended. The contract time shall not be extended due to any disputes remaining unresolved unless such contract time extension is agreed upon in a mutually executed Change Order.

19. **Indemnification**.

A. To the fullest extent permitted by the applicable law governing this Agreement, the Contractor and each of its Subcontractors and sub-subcontractors (which for the purpose of this Article shall be referred to collectively as "Indemnitor") shall defend, indemnify and hold harmless the Owner, its affiliates and subsidiaries, and their respective officers, trustees, partners, employees and agents, as well as their respective officers, partners, employees and representatives, (hereinafter the "Indemnitees") from and against any claim, cost, judgment, lawsuit, damage, expense or liability, including reasonable attorneys' fees (all hereinafter referred to as "Damages"), to the extent caused by, arising out of, resulting from or occurring in connection with the performance of the Work by, or any act or omission of the Contractor, its Subcontractors or its respective agents or employees regardless of whether any indemnified party is partially negligent and excluding only liability created by the indemnified party's negligence, gross negligence, recklessness or intentional misconduct, it being the intention of the parties hereto to provide for partial indemnity. Notwithstanding the foregoing, the Contractor shall not be obligated to indemnify, provide coverage for, defend or protect any contractors engaged by the Owner or engaged by any other entity other than the Contractor, performing work at the Project.

B. Notwithstanding the foregoing, wherever there is a provision in the applicable law governing this Agreement making void and unenforceable any such indemnification of any Indemnitee hereunder where such Indemnitee is negligent or at fault, in whole or in part, then and in any such event such indemnification shall apply only to the extent permitted by such applicable law. The Indemnitor's obligation hereunder shall not be limited by the provisions of any Workmen's Compensation or

PLAINTIFF_165

similar act.

C.     The Indemnitor expressly agrees and understands that it is responsible for the performance of its safety-related obligations under this Agreement pertaining to the Work.

D.     The Owner's, Architect's, or Owner's other consultants' review and/or approval of shop drawings, submittals, RFIs or Requests for Change Orders ("RCOs") provided or services performed by the Contractor, its Subcontractors or anyone for whom they may be responsible, shall not relieve the Contractor of its responsibilities under this Agreement or under applicable law. The Contractor specifically waives any right to assert a claim against the Owner or any of its Indemnitees by virtue of the Owner's review and/or approval of any documents provided or services performed by the Contractor, its Subcontractors or anyone for whom they may be responsible. Notwithstanding the foregoing, the Contractor shall have no obligation whatsoever arising from casualty, loss, injury, or death arising from defective design or specification, including related services, provided by the Owner's Architect, Engineer, or other consultants.

E.     The indemnification obligation under this Section shall not be limited by a limitation on amount of damages, compensation, or benefits payable by or for the Contractor or a Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

F.     The provisions of the indemnity provided for herein shall not be construed to indemnify any of the Indemnitees for their own negligence or to eliminate or reduce any other indemnification or right which the Indemnitees have by law.

G.     The Contractor shall cause the foregoing indemnification agreement by the Contractor to be included in each Subcontract between the Contractor and a Subcontractor and shall be in favor of each of the Indemnitees and the Contractor, and at the Owner's request, the Contractor shall provide evidence satisfactory to the Owner that it has fulfilled its obligation under this Section.

H.     The indemnifications afforded pursuant to this Article that require performance by either party subsequent to the expiration or termination of this Agreement shall survive such expiration or termination.

## 20.    Call-Backs

A.     On written notice from Owner within thirty (30) Calendar Days after Substantial Completion (the call-back period), Contractor shall promptly repair or replace any portion of the Work which becomes Defective due to faulty materials or workmanship.

B.     The obligation of Contractor to repair or replace Defects due to faulty materials or workmanship during the call-back period is in addition to and does not limit any other remedy Owner may have under the Contract Documents, Law, or any warranty provided by Contractor or others. This call-back remedy does not limit the liability of Contractor for Defective Work or limit the time within which proceedings may be commenced to enforce rights and obligations under this agreement.

## 21.    Warranty.

A.     The Contractor warrants that:

PLAINTIFF_166

i.     Work performed under this Agreement conforms to the requirements contained in the Contract Documents, and will be free of any defects in equipment, material, or design furnished, or workmanship performed by the Contractor, or any Subcontractor, supplier or manufacturer retained by it for purposes of performing the Work contemplated by this Agreement;

ii.     all materials and equipment incorporated in the Project shall be new and that the Work shall be of good quality, free from improper workmanship and defective materials and equipment and in full conformity with the Contract Documents;

iii.     it has secured all rights, titles, licenses and other authority which may be required to enable it to perform the Work; and

iv.     it will perform all start-up operations for any equipment or materials incorporated into the Work in accordance with all manufacturer requirements and the requirements of the Contract Documents, and that it will properly demonstrate to and initially train the Owner and any personnel designated by the Owner in the use, operation, care and maintenance of all such equipment and materials.

B.     **General Warranty Provisions.**

i.     The Warranty Period shall be for a period of one (1) year ("Warranty Period"). Except as otherwise provided in this agreement, the Warranty Period shall begin from the date of Final Completion. This period of one (1) year shall be extended with respect to portions of the Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work. The foregoing time limitations shall not apply to defects and deficiencies which are latent and not readily ascertainable by ordinary observation; for any defect not discovered within one (1) year from Final Completion, the warranty required hereunder shall begin to run from the time such defect should have been discovered with the exercise of reasonable diligence, and shall continue for (1) year from that time. The Contractor acknowledges that the commissioning of certain equipment installed at the Project may take place after Substantial Completion, and that the warranty for any such equipment shall run from the date of the final commissioning of such equipment, or Final Completion, whichever is later, provided that in no event shall the Contractor's warranty exceed that provided by the respective equipment manufacturer. All subcontractor, manufacturer or equipment warranties that extend in excess of one (1) year from Final Completion shall be assigned to the Owner for enforcement.

ii.     The Contractor shall remedy, at its own expense, any failure of, or failure to conform, or any defect in the Work during the aforesaid warranty period. In the event the Owner is required to incur any expense relating to the correction of any defective Work, all such direct expenses, including additional testing and inspections shall be the sole obligation of the Contractor who shall reimburse the Owner upon demand.

iii.     The Contractor shall promptly correct any defective Work failing to conform to the requirements of the Contract Documents, whether observed before or after Substantial Completion, and whether or not fabricated, installed or completed. The Contractor and the Subcontractors shall bear all reasonable and necessary costs of correcting such rejected Work, including additional testing and inspections and reasonable compensation for the

PLAINTIFF_167

Architect's, the Engineer's, and the Owner's other consultants' services and expenses made necessary thereby.

iv. The Contractor shall remove from the Site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

v. All warranties and guarantees required by this Agreement or obtained by the Contractor or its Subcontractors, or material suppliers/vendors as a result of performing the Work shall be assigned to the Owner.

vi. The provisions of this Article shall survive and continue beyond the Final Payment and the Final Completion Date or any termination of this Agreement

vii. Nothing contained in this Agreement shall be construed to establish a period of limitation with respect to other obligations of the Contractor under the Contract Documents other than the applicable statute of limitations. The establishment of any warranty period described herein relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which any proceedings may be commenced by the Owner or the Contractor to establish the others' liability or with respect to any of the obligations called for in this Agreement.

viii. To make a warranty Claim under this agreement, Owner must send a clear and specific written complaint to Contractor at the address set forth above within the Warranty Period, unless otherwise specified in the list of items covered under this warranty. Contractor shall make repairs, replacements and corrections promptly and at no expense to Owner.

ix. Upon receipt of written notification under this Paragraph, Contractor must notify Owner within 30 calendar days of a disputed claim. Contractor and Owner agree to a dispute resolution process as specified in the Contract Documents. Under the Magnuson-Moss Warranty Act and under this warranty, suit may not be filed against Contractor until the Claim has been submitted for informal dispute settlement and a decision has been reached, or a waiting period of 40 Calendar Days has been exceeded for a decision, following the submission of a request for warranty repair, whichever comes first. State or federal Laws may permit filing a suit without the waiting period, despite the terms of this Agreement.

x. Owner must provide Contractor with reasonable access during the Work Day to perform obligations created by this warranty. If Owner fails to provide access, Contractor is relieved of the obligation to make repairs for which access has been denied until such time as access is provided.

22. **Owner's Right to Stop the Work.** If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents or fails to carry out the Work in accordance with the Contract Documents after written notice thereof, the Owner, by written notice may order the Contractor to stop the affected portions of the Work until the cause for such order has been eliminated.

23. **Owner's Right to Carry Out the Work.** If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents or if the Contractor fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such

PLAINTIFF 166

deficiencies and charge all costs associated therewith to the Contractor, provided the Owner has given the Contractor ten (10) days written notice of such deficiencies and the Contractor fails to cure, or to commence to cure, within that period.

## 24. Contractor Claims

A.  If Contractor claims that any instruction, Drawing, act or omission of Owner or any representative of Owner, or any agency of government, increases costs to Contractor, requires extra time or changes the Scope of Work, Contractor shall have the right to assert a Claim for such costs or time.

B.  Unresolved Claims or disputes shall not cause Contractor to delay or suspend Work or for Owner to delay or suspend payments as provided by this Agreement. Continued performance by Contractor shall not be deemed a waiver of any Claim for additional compensation or an extension of Time for Completion. Contractor shall cooperate with Owner and representatives of Owner to mitigate potential damages, delays and other adverse consequences arising out of the condition which is the subject of the Claim.

C.  **Continuation of Services During Dispute.** The Contractor shall continue to perform its obligations hereunder, pursue completion of the Work, and maintain the Project Schedule and the Guaranteed Maximum Price during any claim, dispute or proceeding between the parties hereto as if such claim, dispute or proceeding had not been instituted, provided the progress payments are made.

D.  Any claim by the Contractor for any adjustment of the contract terms, price or schedule must be initiated by written notice to the Owner. Any such claim must be initiated within eleven (11) days after occurrence of the event giving rise to such claim (or such shorter.period as may be required hereunder for certain types of claims), and must describe in detail the event giving rise to the claim, the Contractor's estimate of the effect of the event (in terms of cost and time), and the Contractor's efforts to mitigate the effects of the event. Such notice is a condition precedent for litigation or recovery on any such claim.

E.  **Dispute Resolution Procedure.** In the event of a claim or dispute arising out of the obligations called for in this Agreement, the Owner or the Contractor, may (provided both parties agree), by written notice to the other, seek to resolve such claim, or dispute as set forth below:

    i.  **Meeting of Project Managers/Designated Officers for Dispute Resolution.** Any claim by the Contractor or the Owner related to the Work shall be resolved, if possible, by their respective Project Managers/Representatives at a mutually agreed-upon location after the claim is made. If the Project Managers are unable to resolve the claim within two (2) weeks after the claim is made (or at the end of any extended discussion period to which both Project Managers/Representatives agree), it shall be resolved by an officer so designated by the Owner and the Contractor, if possible. If the officer of either the Owner or the Contractor declares an impasse between the parties with regard to the claim or dispute, then such claim or dispute shall continue to the mandatory mediation procedure provided below.

    ii.  **Mandatory Mediation.** As a condition precedent to instituting any litigation relating to or arising out of this Agreement (including any statutory claims or claims in tort, contract, or equity), the parties agree to submit their dispute to non-binding mediation. The allegedly non-defaulting party may issue a Demand for Mediation to the allegedly defaulting party. Mediation shall be conducted in Boulder County, CO. Mediation shall take place within

PLAINTIFF_169

sixty (60) calendar days of the Demand for Mediation, except as such deadline shall be mutually extended in writing by the parties. The mediator shall be chosen mutually by the parties within 30 days of such Demand for Mediation. If the parties fail to choose a mediator within this time, either of the parties may tender the mediation to ADR Services, Inc. to choose a mediator and administer the mediation. Following such mediation, if the parties are not able to come to an amicable resolution of their dispute, the parties may resort to litigation as necessary or desired. Notwithstanding any other provision herein, any party who attempts to institute litigation arising out of or relating to this dispute without first meaningfully and in good faith participating in the mediation process as outlined hereinabove, and/or refuses to participate in the mediation, shall waive the right to seek any of that party's attorneys' fees and costs as provided herein in any subsequent litigation. The non-prevailing party shall pay the prevailing party's attorneys' fees and costs with regard to any motion brought by either party to compel participation in the mandatory mediation described in this Section.

iii. **Waiver of Jury.** The parties agree that they do and shall waive and forego all right to trial by Jury in any litigation, action, proceeding or counterclaim brought by either of the parties hereto. The parties agree that they make such waiver knowingly and voluntarily.

## 25. Insurance

A. **General Requirements.** Contractor shall carry workers' compensation insurance and public liability insurance as required by Law and regulation for the protection of Contractor and Owner during progress of the Work.

B. **Lease Insurance.** Contractor shall carry all types of insurance, policy limits, and amounts of insurance as required by the Lease documents with additional insureds named as required by the Lease. Owner shall make such insurance requirements available to Contractor at or before the time of the signing of this Agreement. Such insurance requirements are incorporated into this Agreement as if fully set forth herein.

## 26. Reliance on Contract Documents

A. Contractor will rely on the Contract Documents as the final authority on what is included in the Project. The Contract documents were created to identify the labor, material and equipment required for proper completion of the Project. The Contract Documents are defective if a reasonably skilled construction contractor doing Similar Work in the community and following generally accepted trade practice could not use the Contract Documents to identify each labor, material and equipment cost required to complete the Project. Contractor bears no responsibility for defects in the Contract Documents.

B. If inconsistent, the construction Drawings take precedence over the Specifications.

C. Except as specifically provided elsewhere in this agreement, inconsistencies shall be resolved by giving precedence to the less restrictive, standard quality, less demanding provision in codes, safety orders, Contract Documents, referenced manufacturers' specifications, and industry standards.

PLAINTIFF_170

D.    Pending clarification by Owner, Contractor shall perform no Work on any portion of the Project requiring an interpretation of the Contract Documents. Contractor has no liability for Work done before discovering the need for interpretation so long as that Work was done in good faith reliance on one of the Contract Documents.

**27.    Miscellaneous Terms.**

A.    **Interpretation of the Contract**

   i.    Words and abbreviations defined in this contract are capitalized and should be understood as defined. Words commonly used in the construction industry are to be understood in their recognized technical or construction industry context. Any word not defined in this contract and which does not have a well-known technical or construction industry meaning is to be understood as defined in the most recent edition of the Merriam-Webster Collegiate Dictionary.

   ii.   Nothing in the Contract Documents shall be interpreted as requiring Contractor to violate any Law or regulation imposed by government.

B.    **No Waiver of Contract Provisions.** The failure of either Party to insist on strict performance of terms, covenants and conditions in the Contract Documents shall not be construed as waiver of any term, covenant or condition in the Contract Documents. Nor shall any custom or practice which may evolve between Contractor and Owner be construed to waive or lessen the right of either Party to insist   upon performance in strict compliance with the Contract Documents.

C.    **Severability.** Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, but such invalid, illegal or unenforceable provision will be reformed, construed and enforced in such jurisdiction so as to render it valid, legal, and enforceable consistent with the intent of the parties insofar as possible.

D.    **Entire Agreement.** This Agreement, including any Exhibits, constitutes the entire agreement between Contractor and the Owner regarding the subject matter hereof and it supersedes any prior agreement, promise, representation, written or otherwise, between Contractor and the Owner with regard to this subject matter. It is entered into without reliance on any agreement, or promise, or representation, other than those expressly contained or incorporated herein, including the Exhibits, and it cannot be modified or amended except in a writing signed by Contractor and a duly authorized officer of the Owner.

E.    **Counterparts.** This Agreement may be executed in separate counterparts, any one of which need not contain signatures of more than one party, but all of which taken together will constitute one and the same Agreement. Signatures transmitted via facsimile shall be deemed the equivalent of originals.

F.    **Headings and Construction.** The language of all parts of this Agreement will in all cases be

PLAINTIFF_171

construed as a whole according to its fair meaning, and not strictly for or against any of the parties. The paragraph headings in this Agreement are intended solely for convenience of reference and will not in any manner add to, limit, modify or otherwise be used in the interpretation of any of the provisions of this Agreement.

G.  **Successors and Assigns.** This Agreement is intended to bind and inure to the benefit of and be enforceable by Contractor, the Owner and their respective successors, assigns, heirs, executors and administrators, except that Contractor may not assign any of Contractor's obligations hereunder and may not assign any of Contractor's rights hereunder without the prior written consent of the Owner.

H.  **Attorney Fees.** If either party hereto brings any action to enforce such party's rights hereunder, the prevailing party in any such action shall be entitled to recover such party's actual attorneys' fees and costs (including expert witness fees) incurred in connection with such action.

I.  **Governing Law and Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of CO. The sole venue for adjudication of any dispute or claim arising out of or related to Contractor's retention with Owner and/or this Agreement shall be in a court of competent jurisdiction located within Boulder County.

J.  **Relationship of the Parties.** Contractor is an independent contractor for the Owner and no contractor or employee of Contractor shall be deemed or interpreted to be employees of the Owner.

K.  **Exhibits.** The following Exhibits are incorporated herein by reference:
    Exhibit B – Scope of Work
    Lease between Landlord and Owner as provided to the GC
    Architectural Drawing by One Architecture (Nathan Bisch)

L.  **Not a Third-Party Beneficiary.** Nothing herein shall be deemed to make Contractor a third-party beneficiary of any agreement between Owner and any third party. The parties do not intend to make any other party a third-party beneficiary of this Agreement.

M.  **Jointly Negotiated.** This Agreement has been jointly negotiated and drafted and the language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties.

N.  **Review with Independent Counsel.** The Parties agree that each party has had ample opportunity to review this Agreement with independent legal counsel and have done so, or have voluntarily chosen without suggestion or coercion by the other party, not to consult counsel regarding the entering into of this Agreement.

O.  **Manner of Execution.** Facsimile and/or electronic signatures shall have the same force and effect when affixed hereto as the original signatures.

P.  **Notices.** All notices pertaining to this Agreement shall be in writing and shall be sent certified mail, return receipt requested, to the address of the parties as set forth herein, with a copy to the email address denoted herein, or to any other addresses as the addressee may hereafter designate in writing. Copies of all notices to the parties shall be sent as follows:

PLAINTIFF_172

| To Owner:<br>**MY SALON SUITE**<br>SIB Salons, LLC d/b/a My Salon Suite<br>10200 W 44th Ave, Suite 220<br>Wheat Ridge, CO 80033<br>Tracy Ulmer (Owner)<br>(720) 583-4564<br>tulmer@mysalonsuite.com<br>Natalie Sperr (Owner)<br>(720) 441-4895<br>nsperr@mysalonsuite.com | To Contractor:<br>**ELDER CONSTRUCTION**<br>10197 Bunson Way<br>Louisville, KY 40299<br>Phone: 502-491-8005<br>**David Elder- President**<br>Email: _davide@elderconstruction.com_<br>Karen Harford (Administrative Contact)<br>_kharford@elderconstruction.com_ |
|---|---|

Q.   **Cumulative Remedies.**   All rights and remedies provided to Contractor by the Contract Documents are cumulative and in addition to and not in limitation of rights and remedies available to Contractor at Law or in equity.

//

//

OWNER HAS THE RIGHT TO REQUEST A PERFORMANCE AND PAYMENT BOND ON THE PROJECT WHICH ENSURES THE PROJECT WILL BE COMPLETED ACCORDING TO THIS AGREEMENT AND THAT LIENS ON THIS JOB ARE DISCHARGED IN RETURN FOR PAYMENT IN FULL BY OWNER.

This agreement is entered into as of the later of the date set forth above.

**Owner Name: MY SALON SUITE- Louisville, CO**

_____ (Signature)

_____ (Printed Name)
Tracy Ulmer
member- SIB Salons, LLC
owner- My Salon Suite, Louisville (Title)

**Contractor Name: Elder Construction**

_____ (Signature)

_____ (Printed Name)
David G. Elder

_____ (Title)

PLAINTIFF_173